## Case No. 464.

### ANONYMOUS.

### [3 N. Y. Leg. Obs. (1845,) 155.]

### District Court, N. D. New York.

BANKRUPTCY—DISCHARGE AND CERTIFICATE—JURY TRIAL—RIGHT TO BEGIN.

On trial by jury to determine the right of a bankrupt to a discharge and certificate, the opposing creditor has the affirmative of the issue, and has consequently the right to begin.

At the close of an argument, on a motion for a new trial by jury to determine the right of a bankrupt to a discharge, Mr. Myers stated to the court, that considerable doubt and some diversity of opinion and practice prevailed among the commissioners before whom trials of this nature had from time to time been ordered, upon the question, whether it was the right of the objecting creditor, or of the bankrupt, to begin; and he suggested that, as there were yet many trials to be had, an expression of the opinion of the court on this point, would be useful in relieving the commissioners from embarrassment, and in producing uniformity in the practice.

---

## Case No. 465.

### ANONYMOUS.

### [4 N. Y. Leg. Obs. (1846,) 98.]

### District Court, S. D. New York.

ALIEN—NATURALIZATION—RESIDENCE.

1. To entitle an alien to be naturalized, [Under Act April 14, 1802, (2 Stat. 153, c. 28,)] it is not enough that he should have been within the jurisdiction of the United States for more than five years; the act of Congress contemplates a territorial residence.

2. Where, therefore, an alien deserted from a ship of war and enlisted on board an American frigate in 1814, war then existing between the two nations, and continued in the United States navy throughout the war and for several years subsequently, and had since that time followed the seas constantly, sometimes in the merchant, and at other times in the United States service, but had had no residence within any part of the United States, other than by such employment on board American vessels. *Held*, that he had not been

a resident, within the meaning of the act of congress, and was not entitled to be naturalized.

[In the matter of the application of an alien for a certificate of naturalization. Denied.]

BETTS, District Judge. Application is made by an alien to be naturalized upon these facts: The applicant deserted from a British ship of war, and enlisted on board an American frigate in 1814, war then existing between the two nations. He continued in the United States navy through the war and several years subsequently, and since that time has followed the seas constantly, sometimes in the merchant, and at other times in the United States service. He has had no residence within any part of the United States, other than by such employment on board American vessels. In 1832 he filed his declaration of intention to become naturalized. The point for decision, applying these facts to the law, is whether such residence has been shown as is required by the act of congress. When the applicant came within the jurisdiction of the United States in 1814, the laws in force made it necessary he should prove to the court a residence within the United States five years at least, and within the state where his application is made one year at least, in order to obtain his naturalization. Act April 11, 1802, § 1, art. 3, [Act April 14, 1802; 2 Stat. 153.]

It is plain these provisions demand more than that the applicant should be within the jurisdiction of the United States, and look to a territorial residence. The policy of the naturalization laws is to amalgamate immigrants with the resident population. This is ascertained, not only from our legislative and political history, but is distinctly indicated upon the face of every enactment on the subject. The act of March 26, 1790, [1 Stat. 103,] the first one on the subject passed under the federal constitution, required a residence of at least two years within the limits, and under the jurisdiction of the United States; and that the jurisdiction referred to is territorial, and inter fines, is made manifest by the addition that the alien is to make his application to a court in some one state wherein he has resided for the term of one year at least. At that day there were many military posts and stations still occupied by the British forces, which could not, until surrender or conquest be regarded as under our actual jurisdiction, and it might be questioned whether the Indian country in possession of the natives, but within the boundaries of the United States, might not be claimed as a place of residence, where a right to naturalization might be acquired, although not under the dominion of the laws of the United States. To mark, then, definitely, the policy upon which the privilege rests, that the foreigner should be intermingled and incorporated

with citizens resident upon the soil of the United States, congress enacted that in addition to his coming within the limits of the country, the alien should place himself also under its laws and authority.

The act of January 29, 1792, (2 Stat. 446,) does not include the condition of jurisdiction required in the subsequent act of 1802, and that condition is only afterwards enjoined in relation to certain classes of residents. Acts March 22, 1816, [3 Stat. 258,] and May 26, 1828, [Act May 24, 1828; 4 Stat. 310.]

This applicant most clearly could not, under the laws then in force, have obtained a certificate of naturalization, if he had taken the earliest measures for it, after abandoning his country, without having first acquired a residence within some state or territory of the United States. An employment in the naval marine would not be a residence within any state, nor would sailing in merchant vessels gain an inhabitancy within this state, according to the local law of that period, or as it now prevails. Rev. Laws N. Y. April 8, 1813; 1 Rev. St. N. Y. p. 621, § 29. [See note at end of case.]

The laws of the United States were essentially modified with respect to the particular of residence by the act of March 3rd, 1813, the 12th section enacting, "that no person who shall arrive in the United States, from and after the time when this act shall take effect, shall be admitted to become a citizen of the United States, who shall not, for the continued term of five years next preceding his admission as aforesaid, have resided within the United States without being at any time during the said five years out of the territory of the United States." 4 Stat. 514. The act commenced operation with the determination of the last war, (Feb. 1815,) but the facts agreed in this case, show that the applicant did not come within the territory of the United States until after that period. His being on board a public vessel would not constitute a residence, which would afterwards go on, because, as has been already indicated, under the act of 1802, the residence must have its commencement within the territory of the country. Probably after a domicile is acquired within the country, it might, under the act of 1802, be regarded as continuing so as to satisfy at least four of the five years required, although the applicant should be during that period engaged in the merchant or naval service, but the beginning must necessarily be his coming within the country, with intent to render this his only abode and home. There was, accordingly, no arrival of the applicant within the United States according to the intent of the act of 1813, until after that had gone into operation, and then in its terms it inhibits the grant of naturalization, when the applicant has been during any part of the five years out of the territory of the United States. This applicant had been, almost without intermission, out of the territory of the United States, following the seas as his sole occupation, and having no fixed home within this country. The act of March 3rd, 1813, whilst it declares a great principle in excluding foreigners from our national and merchant marine, and in bestowing the employment upon our citizens, must still be regarded as growing out of the relations notoriously existing at the time between the United States and Great Britain on that subject. The aggressions and outrages committed on board American vessels in searching for and impressing seamen, led to the declaration of war in 1812, and the remonstrances and recriminations which had been the chief theme in the diplomacy of the two governments for years antecedent to the war, were unquestionably intended to be afterwards avoided by the enforcement of the policy indicated by this statute. This enactment might probably be proffered by the United States, as a basis of negotiation with the English government, but although no concession of the controverted subjects was made by treaty on the part of Great Britain, yet this particular section has been allowed to stand as a solemn assurance that the privileges of naturalization, under our laws, would hereafter be restricted according to its provisions.

It is now, therefore, a part of the naturalization laws, applicable to all others as well as seafaring men, who have emigrated to the United States since 1815, and must supply the rule of decision in the case now submitted to the court. The application must be, therefore, denied.

[NOTE. The provisions of 1 Rev. St. N. Y. (1st Ed. 1829,) p. 621, § 29, are as follows: "Every person of full age, who shall be a resident and inhabitant of any town for one year, and the members of his family who shall not have gained a separate settlement shall be deemed settled in such town." Here follow provisions for minors gaining a settlement. This section is a part of chapter 20, tit. 1, "Of the Relief and Support of Indigent Persons."]